IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID SERRANO,<br>          Plaintiff,<br>v.<br>LOUIS FOLINO, Superintendent;<br>THOMAS JACKSON, Deputy<br>Superintendent; MS. DIANA<br>MANSON, Health Care<br>Administrator; DR. STAN FALOR,<br>SCI Greene Medical Doctor; DR.<br>JEFFREY A. BEARD, Secretary of<br>the Department of Corrections;<br>MS. SHARON BURKS, Chief<br>Grievance Officer; DR. PAUL<br>NOEL, Regional Medical Director;<br>JOHN DOE I, Vice President of<br>Health Care Services; JOHN DOE<br>II, Correctional Officer,<br>          Defendants. | Civil Action No. 05 - 1118<br><br>Judge Thomas M. Hardiman /<br>Magistrate Judge Lisa Pupo<br>Lenihan<br><br><br>Doc. Nos. 32 & 39 |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.      RECOMMENDATION

For the reasons that follow, it is respectfully recommended that the Motion to Dismiss filed by Defendants Falor and Noel (doc. no. 32) be denied. It is further recommended that the Motion to Dismiss filed by the Commonwealth Defendants (doc. no. 39) be granted as Defendants Folino, Jackson, Beard and Burks and denied as to all other Defendants. Defendants will be directed to file a summary judgment motion exclusively concerning the issue of whether Plaintiff complied with the mandatory exhaustion requirement in 42 U.S.C. § 1997e with respect to Plaintiff's claim concerning the confiscation of his knee brace. An appropriate order will issue.

II.     REPORT

Plaintiff, David Serrano, a state prisoner presently confined at the State Correctional Institution at Camp Hill, Pennsylvania, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, complaining that he has been denied the right to seek medical aid in violation of the Eighth Amendment of the United States Constitution.  Specifically, Plaintiff alleges that he was denied an operation on his left knee to repair a torn lateral meniscus and that he has not been provided with an adequate brace or physical therapy to treat his condition.

A. Standard of Review

The defendants have filed motions to dismiss (doc. nos. 32 & 39).  Pursuant to Fed. R. Civ. Proc. 12(b)(6), a motion to dismiss may be granted by the court if it is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegation."  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957).  The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim.  Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true.  Estelle v. Gamble, 429 U.S. 97 (1976).[1]

---

1.  In addition, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in
(continued...)

B. Plaintiff's Allegations

As noted by Defendants, one must review the Exhibits attached to Plaintiff's complaints in order to figure out his claims and the defendants he is intending to sue. In this regard, on August 25, 2005, Plaintiff filed his original complaint, which contained several exhibits (doc. no. 5). While only Jeffrey A. Beard was named in the caption of that Complaint, Plaintiff named the following as Defendants in his Response to Defendant Falor and Noel's motion to dismiss (doc. no. 38) and provided instructions for service for these individuals: Louis Folino, Superintendent of SCI-Greene; Thomas Jackson, Deputy Superintendent, Diana Manson, Health Care Administrator; Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections (DOC) and Sharon Burks, Chief Grievance Officer for the DOC. All of these Defendants executed waivers of service and the Court has included these individuals as defendants in this action.[2]

On September 19, 2005, Plaintiff filed a Supplemental Complaint and attached exhibits (doc. no. 7). The only Defendant listed in the caption of the Proposed Supplemental Complaint is

---

1. (...continued)
the record of the case in considering a motion to dismiss under Rule 12(b)(6). <u>Pryor v. National Collegiate Athletic Ass'n.</u>, 288 F.3d 548, 560 (3d Cir. 2002) (noting that documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim and may be considered by the court in deciding a motion to dismiss); <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); <u>Chester County Intermediate Unit v. Pennsylvania Blue Shield</u>, 896 F.2d 808, 812 (3d Cir. 1990).

2. Plaintiff also named three John Does in his Response, none of which have been named or served to date in this action.

Harry Wilson, Superintendent of SCI-Fayette.  In his response to the Commonwealth Defendants' Motion to Dismiss (doc. no. 42), Plaintiff claims he is adding as new Defendants the following individuals:  Harry Wilson, Superintendent of SCI-Fayette; Robert Tretnik, Health Care Administrator at SCI-Fayette; and Ms. Linda Harris, Deputy Superintendent of SCI-Fayette.

Plaintiff complains that he suffers from a torn lateral meniscus and requires surgery to his left knee to repair.  The documents attached to the initial Complaint reflect that Plaintiff filed grievance number 92689 regarding whether he was being denied an operation on his knee.  In the Response to his Grievance dated August 13, 2004, Defendant Manson informed Plaintiff that she had reviewed his case with Dr. Falor and learned that he had scheduled him for a re-assessment in October (doc. no. 5, p.10 of 36).  In addition, Manson informed Plaintiff that Falor would meet with the Regional Medical Director, Dr. Noel, prior to his appointment.  In a letter to Prison Health Services dated August 18, 2004 (doc. no. 5, pp. 12 and 13 of 36), Plaintiff states that he was in a car accident and was supposed to have knee surgery but could not because he became incarcerated.  He claims that a cat scan showed a cruciate ligament tear and that he was seen by Dr. Falor and a specialist who told him he needed surgery.  He further claims that he signed two documents to get his records from the hospital that was supposed to perform his surgery prior to his incarceration.  He claims he is in constant pain and that his knee keeps buckling under his weight and is black and blue.

In his appeal of his grievance, he claims that Dr. Falor stated that he needed an operation but Prison Health Services would not pay for it (doc. no. 5, p. 17, 25). On November 8, 2004, Dr. Falor responded to Plaintiff that on September 9, 2004, he requested that Plaintiff furnish him the date of his car accident and the address for the Episcopal Hospital so that they could secure his medical records. He informed Plaintiff that he had not received this information and, therefore, the collegial review committee could not proceed in reviewing his case and that their failure to approve his operation was not based on cost (doc. no. 5, p. 25).

On February 25, 2005, Plaintiff received a final response to his grievance, which provides, in relevant part, as follows.

> . . . The Department of Corrections Assistant Medical Director has reviewed your case and made the following determination. The source of pain is not the anterior cruciate tear, but rather the torn lateral meniscus and the instability of the knee. You should comply with the specialist's recommendations of a stabilizing brace. Physical therapy might also be helpful.

Doc. no. 5, p. 32.

Also attached as an exhibit is a letter to DOC chief counsel from Attorney Sean J. Bellow dated March 15, 2005 (doc. no. 5, p.35). This letter indicates that Plaintiff's medical records reveal that Plaintiff suffers from "internal derangement of the left knee" and seeks a response from DOC regarding the need for surgery. There is no response from DOC in the record.

In his supplemental complaint and exhibits, it is discovered that, originally, Plaintiff was prescribed a knee brace

5

that contained metal rods for stabilization.  Because Plaintiff was housed in a restricted housing unit, the metal rods were replaced with plastic ones for security reasons.  When Plaintiff was transferred to SCI-Fayette in early 2005, his brace was confiscated for a security review.  Plaintiff was offered a replacement knee brace that did not have the plastic mobilizing bars or stabilizing straps.  Plaintiff claims that the altered brace did not comport with the specialist's recommendation of a stabilizing knee brace with plastic rods for support (doc. no. 7, p. 13).  Plaintiff refused to accept this brace and filed grievance no. 108137 to Superintendent Wilson complaining about the supposedly inadequate knee brace.  The initial response to his inmate request provides that his claim was addressed by the medical department and that "braces are only necessary for sports type activities but not needed for exercising in the L-5 yard" (doc. no. 7, p. 22).  There is no further evidence showing whether or not he appealed this determination through all three levels of administrative review.

      B. <u>Failure to Identify Defendants in the Caption</u>

The only Defendant named in the caption of the original Complaint is Mr. Jeffrey A. Beard, Ph.D.  Similarly, the only Defendant listed in the caption of the Proposed Supplemental Complaint is Mr. Harry Wilson, Superintendent of SCI-Fayette.  On December 13, 2005, Plaintiff filed a Motion to Authorize Service.  Included in the caption of the motion are Defendants Folino, Jackson, Manson, Falor, Beard, Burks, Noel, Wilson, Harris, Tretnik and John Does I - III.  On March 21, 2006, this Court granted Plaintiff's Motion to Authorize service.  On May 11,

2006, Senior Deputy Attorney Robert Willig executed waivers of service for Commonwealth Defendants Beard, Manson, Jackson, Folino and Burks.  On June 2, 2006, Defendants Noel and Falor executed waivers of service and attorney Brian Shreckengost entered his appearance on their behalf.  All served parties are represented by counsel and have filed motions to dismiss this action.

To date, the only unserved parties are Commonwealth Defendants Wilson, Harris and Tretnik.  Pursuant to Court Order dated January 30, 2007 these three persons were added as defendants to the caption of the complaint. On the same date the Attorney General entered an appearance for these defendants. Consequently, the motions to dismiss should not be granted on the basis of the Plaintiff's failure to have identified the individuals in the captions of his original and supplemental complaint.

### C. Liability under 42 U.S.C. § 1983

In order to assert liability pursuant to 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981),

*overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

Plaintiff takes issue with the medical treatment he has received for his knee. Specifically, Plaintiff complains that he was denied surgery on his knee and that he was not given an adequate knee brace. Plaintiff's claim concerning his medical treatment invokes the protections of the Eighth Amendment. In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires the court to <u>objectively</u> determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay

8

person would easily recognize the necessity for a doctor's attention.  Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

   The second prong requires a court <u>subjectively</u> to determine whether the officials acted with a sufficiently culpable state of mind.  Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury.  Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

   Here, DOC acknowledges that Plaintiff suffers from a torn lateral meniscus.  Thus, Plaintiff has demonstrated the existence of a serious medical need.  In addition, Plaintiff has pleaded that Defendants acted with deliberate indifference because they denied medical treatment, *i.e.*, his knee surgery, based on a non-medical reason -- cost.  With respect to his second claim, he alleges that Defendants denied him medical treatment based on security -  again, a non-medical reason.  Moreover, he claims that Defendants continue to refuse to provide him with an adequate brace to support his torn meniscus.

   Taken as true, as this Court must when reviewing a motion to dismiss, the Plaintiff's allegations and the record evidence are sufficient to show that the Defendants may have acted with deliberate indifference.  Specifically, Plaintiff

alleges that Defendants were on notice that Plaintiff faced a substantial risk of serious harm due to his torn meniscus and disregarded that risk by failing to take reasonable measures to abate it.  Thus, Plaintiff has alleged a violation of his rights as protected by the Eighth Amendment.

Notwithstanding, not all Defendants can be liable for failure to provide adequate medical care.  In this regard, in order to establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  Rizzo v. Goode, 423 U.S. 362 (1976).  Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct.  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986).

With respect to Plaintiff's first claim, liability can be assessed only against Defendants with authority to make treatment decisions concerning Plaintiff's medical care, *i.e.*, the decision whether or not he required surgery to fix his torn meniscus.  *See* Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir.2004) (holding that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference).  The Defendants alleged to be involved in Plaintiff's first claim are as follows:  Louis Folino,

10

Superintendent of SCI-Greene; Thomas Jackson, Deputy Superintendent, Diana Manson, Health Care Administrator; Jeffrey A. Beard, Secretary of the Pennsylvania Department of Corrections and Sharon Burks, Chief Grievance Officer for the DOC.  With the exception of health care administrator Manson, all of these individuals are non-medical personnel.  Because Plaintiff was under the supervision of medical personnel during the entire relevant time period, his allegations do not support a claim for the denial of adequate medical care against these Defendants.  See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (warden and commissioner cannot be considered deliberately indifferent by failing to directly respond to a medical complaint by a prisoner who was receiving treatment by the prison doctors).  Consequently, Plaintiff's claim regarding the failure to provide him with knee surgery against Defendants Folino, Jackson, Beard, and Burks should be dismissed.

With respect to Defendant Manson, health care administrators do not prescribe medications or make decisions regarding the course of treatment prescribed to inmates.  As such, courts generally have found that prison health care administrators did not act with "deliberate indifference" when the prisoner plaintiff is receiving treatment from the prison doctor.  See, e.g. Hemingway v. Falor, 2006 WL 2786866, *4 (3d Cir. Sept. 28, 2006); Miller v. Hoffman, 1999 WL 415397, *11 (E.D. Pa. June 22, 1999) (collecting cases).  Notwithstanding, health care administrators are not immune from liability.  Where the facts indicate personal involvement in an inmate's allegedly

11

deficient medical treatment, courts have refused to grant summary judgment in favor of the administrator. *See, e.g.*, Sappington v. Ulrich, 868 F. Supp. 194 (E.D. Tex. 1994); Kaminsky v. Rosenblum, 737 F. Supp. 1309 (S.D.N.Y. 1990).[3]

In the instant action, Plaintiff alleges that he was denied surgery due to the cost. Deliberate indifference can be shown where prison authorities prevent an inmate from receiving a recommended treatment. *See* Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979). It is unclear from Plaintiff's allegations whether Defendant Manson had any ability or authority to influence the course of medical treatment he received. Thus, Plaintiff's claim against Defendant Manson should not be dismissed at this time.

Plaintiff alleges that Dr. Falor told him that he could not have the operation due to cost. The initial response to his grievance indicates that Dr. Falor and Dr. Noel, the Regional Medical Director, were supposed to review his case (doc. no. 5, p. 10).[4] Moreover, the responses to Plaintiff's grievances

---

3. *See also* Cooper v. Schriro, 189 F.3d 781, 783-784 (8th Cir. 1999) (prisoner's allegations that health care administrator refused him treatment after he filed medical service request regarding painful decayed and cracked teeth stated cause of action for deliberate indifference to serious medical need in violation of Eighth Amendment).

4. The Court notes that Dr. Noel is mentioned in the initial response to Plaintiff's grievance and that the DOC Bureau of Health Care similarly is mentioned. Because Dr. Noel was identified by the DOC as an involved party, there is no basis upon which to dismiss him for Plaintiff's failure to identify him in grievance no. 92689. *See* Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004) (holding that grievance officer's identification of person in Initial Review Response was sufficient for mandatory
(continued...)

indicate that his case was reviewed by the DOC Medical Director (doc. no. 5, pp. 27 and 32). Thus, Plaintiff's documents indicate that Dr. Falor and Dr. Noel were involved in his medical treatment. Thus, their motion to dismiss should not be granted.

### D <u>Exhaustion of Administrative Remedies</u>

With respect to Plaintiff's second claim, Defendants seek dismissal of Plaintiff's claim on the basis of his alleged failure to have exhausted his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, through the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows.

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In <u>Ray v. Kertes</u>, 285 F.3d 287, 295 (3d Cir. 2002), the Court of Appeals for the Third Circuit held that the issue of whether a prisoner had exhausted his administrative remedies is an affirmative defense that must be pleaded by the defendant.

---

4. (...continued)
exhaustion requirements).

Consequently, the court concluded that such a defense normally was not appropriate in a motion to dismiss.[5]  Similarly, the Court of Appeals for the Third Circuit recently held that the district court should not have considered grievance exhibits attached to a complaint in deciding a motion to dismiss.  *See* Hemingway v. Falor, 2006 WL 2786866, *4 (3rd Cir. Sept. 28, 2006) ("To decide a motion to dismiss, a court generally should consider 'only the allegations in the complaint, exhibits attached to the complaint, matters of public record and documents that form the basis of the claim.'  If a court considers other matters, a motion to dismiss should be converted to a motion for summary judgment.  Reliance on declarations from prison officials or administrators requires conversion.") (internal quotation and citations omitted).  Consequently, the remaining Commonwealth defendants are not entitled to dismissal of this action based on Plaintiff's alleged failure to have exhausted his second claim.

Notwithstanding, the issue of exhaustion is potentially dispositive of Plaintiff's second claim.  In an effort to save time and expense, the court will limit discovery to this one issue.  *See, e.g.*, Balderston v. Fairbanks Morse Engine Div. Of Coltec Indus., 328 F.3d 309, 320 (7th Cir. 2003)(courts "'have substantial discretion to curtail the expense and intrusiveness

---

5.  In a footnote, the court of appeals explained that its decision did not mean that defendants could not raise the prisoner's failure to exhaust as the basis for a motion to dismiss in cases where the defense would present an "insuperable barrier to recovery by the plaintiff."  *Id.*, 2002 WL 499454 at *9, n.8 (citing Flight Sys., Inc. v. Elec. Data Sys. Corp., 112 F.3d 124, 127 (3d Cir. 1997).

of discovery' in limiting an adverse party's request for broad discovery"); Stewart v. Winter, 669 F.2d 328, 331 (5th Cir. 1982)("as in all discovery matters, the district court has broad discretion in limiting the scope of discovery.").

   Given the unique circumstances of this case concerning the confusion over who are proper parties to this action and what claims Plaintiff is raising in his two complaints, and in an effort to save the parties needless expense, Plaintiff will be given the opportunity to conduct discovery solely on the issue of exhaustion of his administrative remedies.  The remaining Commonwealth Defendants then may file a motion for summary judgment based upon Plaintiff's failure to exhaust.  After Defendants file and serve such a notice, an order will issue requiring Plaintiff to file a response.  An appropriate order will issue.

**III.**     **CONCLUSION**

   For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss filed by Defendants Falor and Noel (doc. no. 32) be denied.  It is further recommended that the Motion to Dismiss filed by the Commonwealth Defendants (doc. no. 39) be granted as Defendants Folino, Jackson, Beard and Burks and denied as to all other Defendants.

   In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have ten (10) days from the date of service of objections

to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

January 31, 2007

cc:

    David Serrano
    EF 4816
    SCI Camp Hill
    2520 Lisburn Road
    PO Box 598
    Camp Hill, PA 17001-0598

    Robert A. Willig
    Office of Attorney General
    564 Forbes Avenue
    Manor Complex, 6th Floor
    Pittsburgh, PA 15219

    Bryan K. Shreckengost
    Pietragallo, Bosick & Gordon
    One Oxford Centre
    38th Floor
    Pittsburgh, PA 15219